UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RENATO ALMEIDA,
    *Plaintiff*,

v.

IVETTE BERRIOS and CHRISTIANE ALMEIDA,
    *Defendants*.

No. 3:19-cv-549 (JAM)

# ORDER GRANTING MOTION OF
# DEFENDANT IVETTE BERRIOS FOR SUMMARY JUDGMENT

Plaintiff Renato Almeida has filed this lawsuit against defendant Ivette Berrios—a detective with the Hartford police department—alleging claims for malicious prosecution arising from his arrest on charges involving sexual abuse of his daughter. Detective Berrios now moves for summary judgment. Because I conclude that Detective Berrios had probable cause to seek an arrest warrant for Almeida and at the least had arguable probable cause to entitle her to qualified immunity, I will grant the motion for summary judgment.

## BACKGROUND

In June 2016, Detective Ivette Berrios of the Hartford Police Department applied to a state court judge for a warrant to arrest Renato Almeida. She submitted a sworn arrest warrant affidavit in support of her application.[1]

---

[1] Docs. #36-4 (redacted affidavit); #44 (unredacted affidavit filed under seal). Because some of the significant facts bearing on the determination of this motion are reflected only in the unredacted affidavit, I cite and rely on the unredacted affidavit in this ruling. I conclude that disclosure of portions of the sealed document as recounted in this ruling are necessary and overcome any interests in continued sealing. Because the complaint focuses solely on the alleged lack of probable cause at the time of Almeida's arrest, I have no occasion in this ruling to evaluate whether any later facts came to Detective Berrios's attention that could support a claim for malicious prosecution.

The affidavit recounted the following facts involving an extended investigation of allegations that Almeida had sexually abused his 4-year-old daughter. The investigation started in June 2014 when a Hartford police officer was dispatched to the Connecticut Children's Medical Center for a juvenile assault complaint.[2] The officer spoke to the daughter's mother—co-defendant Christiane Almeida—who stated that the daughter told her that her father had kissed her mouth, vaginal area, and buttocks while she was at his home on Sigourney Street in Hartford.[3] The daughter and mother were unable to provide an exact date of this incident but gave an approximate date of June 18, 2014.[4]

On July 2, 2014, the daughter underwent a diagnostic interview by Lisa Murphy-Cipolla at the Children's Advocacy Center at St. Francis Hospital in Hartford.[5] Detective Berrios and a social worker from the Department of Children and Families (DCF) were present for this interview.[6] The interview was also recorded on a DVD and given to Detective Berrios.[7] During the interview, the daughter stated that Almeida had kissed her vaginal area, buttocks, mouth, arms, legs, and chest.[8] She stated that this happened once in her room at her father's residence.[9]

On July 7, 2014, Detective Berrios received medical records from Connecticut Children's Medical Center.[10] The records reflected that a nurse had asked the daughter why she was there,

---

[2] Doc. #44 at 2 (¶ 3). Although the affidavit states that the detective was dispatched to the Connecticut Children's Medical Center on June 18, 2014, the parties agree that he was not dispatched there until June 20, 2014. Doc. #36-2 at 2 (¶ 9) (Detective Berrios's statement of facts); Doc. #41-1 at 1 (¶ 9) (Almeida's response admitting this fact).

[3] Doc. #44 at 2 (¶ 3).

[4] *Ibid.*

[5] *Ibid.* (¶ 4).

[6] *Ibid.*

[7] *Ibid.*

[8] *Id.* at 2-3 (¶ 4).

[9] *Id.* at 3 (¶ 4).

[10] *Ibid.* (¶ 5).

and the daughter responded that Almeida had kissed her on the right hand, right forearm, inner thigh, between her legs, and buttocks.[11] The records further reflected that a doctor observed no visible trauma when he examined the daughter.[12]

On July 14, 2014, Almeida and his counsel met with Detective Berrios at the Hartford police department.[13] Almeida told Detective Berrios that he had learned about the allegations in early July 2014, and that the daughter's mother had accused him of "violating" her daughter by kissing her mouth, privates, and buttocks.[14] Almeida denied the allegations, stating that he loved his daughter and that his daughter had been coached by her mother, who had mental health problems, because they were in the middle of a divorce and custody dispute.[15]

Almeida stated he would cooperate with the investigation.[16] He provided a sworn written statement and a DNA sample, as well as offering to take a polygraph examination.[17]

More than a year later, on August 3, 2015, Almeida agreed to a polygraph exam that was conducted by another Hartford police detective.[18] The detective indicated in his written report that deception was detected in several of Almeida's responses to a question about putting his mouth on his daughter's vagina.[19] After the polygraph exam ended, Detective Berrios re-

---

[11] *Ibid.*

[12] *Ibid.*

[13] *Ibid.* (¶ 6).

[14] *Ibid.*

[15] *Ibid.*

[16] *Ibid.*

[17] *Ibid.* The affidavit recounts that a sexual assault evidence kit was completed when the daughter first went to the Connecticut Children's Medical Center on June 20, 2014 and sent to the Connecticut state police lab. *Id.* at 2 (¶ 3). But because the lab's examination did not reflect any male DNA, the lab did not test the DNA sample that was furnished by Almeida on July 14, 2014. *Id.* at 3-4 (¶ 8).

[18] *Id.* at 3 (¶ 7).

[19] *Ibid.*

interviewed Almeida about the deception in his answers, and Almeida again denied sexually assaulting his daughter.[20]

Almeida gave Detective Berrios his weekly child visitation notes from KidSafe CT.[21] The affidavit stated that these notes, which which were recorded by a KidSafe representative who monitored the visits between Almeida and his daughter, reflected that Almeida's communications, affections, conduct, and activities with his daughter were appropriate.[22]

On August 14, 2015, the police department received another DCF report of allegations of abuse by Almeida.[23] Two weeks later, the daughter was interviewed again by Lisa Murphy-Cipolla at the Children's Advocacy Center.[24] Detective Berrios was not present for this interview but reviewed the DVD recording.[25] According to Detective Berrios's review of the interview, "it was apparent that [the daughter] was disclosing the same incident but this time she provided details."[26] The daughter stated that Almeida put his penis in her mouth and kissed her vagina, breast, and buttocks.[27] She spoke about Almeida's penis getting bigger.[28] She stated that the only thing that her father touched her private parts with was soap.[29] Because of difficulty understanding the daughter's statements which were made in Portuguese, the interview was

---

[20] *Ibid.*

[21] *Id.* at 4 (¶ 9). Although the affidavit does not detail the role of KidSafe, the summary judgment record includes notes recorded on "KIDSAFE CT" letterhead of monthly visits of the daughter with Almeida which were monitored by a representative of KidSafe. Doc. #41-4.

[22] Doc. #44 at 4 (¶ 9).

[23] *Ibid.* (¶ 10).

[24] *Ibid.* (¶ 11).

[25] *Ibid.*

[26] *Ibid.*

[27] *Ibid.*

[28] *Ibid.*

[29] *Ibid.*

4

interrupted to obtain the assistance of an interpreter.[30] The daughter stated in Portuguese that Almeida had put his penis in her mouth and that it tasted like "mosquitoes."[31]

Two weeks later, on August 28, 2015, Detective Berrios interviewed Almeida again with his counsel.[32] Almeida again denied any wrongdoing or sexual assault of his daughter.[33]

Detective Berrios did not apply for an arrest warrant for Almeida until June 2016, and the affidavit does not explain why she waited so long. At the conclusion of the affidavit, Detective Berrios sought to have Almeida arrested on numerous charges of sexual assault and risk of injury to a minor.[34] A Connecticut state court judge signed the arrest warrant application, attesting that there was probable cause to believe that a crime had been committed and that Almeida had committed the crime.[35]

Almeida was arrested and prosecuted but, because of the daughter's hesitancy to testify against her father, the prosecution entered a *nolle prosequi* and the state court dismissed the charges against Almeida on the first day of trial in January 2019.[36] Several months later, Almeida filed this federal lawsuit in April 2019 for malicious prosecution against Detective

---

[30] *Ibid.*

[31] *Ibid.*

[32] *Ibid.* (¶ 12).

[33] *Ibid.*

[34] *Ibid.* (¶ 13). Because Almeida's lawsuit raises a general challenge to whether he engaged in any improper sexual contact with his daughter and does not challenge the probable cause for any particular criminal statute that was cited in the arrest warrant affidavit or that was the basis for the eventual charges filed against him, there is no need for me to recite each specific criminal charge or to review the elements of each charge.

[35] *Id.* at 2 (bottom).

[36] Doc. #36-2 at 14-15 (¶ 60); Doc. #41-1 at 4 (admitting ¶ 60). Detective Berrios does not seek summary judgment with respect to the favorable termination requirement for a malicious prosecution claim. *See Spak v. Phillips*, 857 F.3d 458, 463–66 (2d Cir. 2017).

Berrios and against Christiane Almeida, his former spouse and the mother of their daughter.[37] Detective Berrios alone has now moved for summary judgment.[38]

## DISCUSSION

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable factfinder to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).[39]

Almeida alleges that he was subject to malicious prosecution in violation of both the Fourth Amendment and Connecticut common law. The Fourth Amendment protects the right of the people to be free from unreasonable search and seizure. *See* U.S. Const. amend. IV. A plaintiff who has been subjected by a defendant state actor to an arrest or other seizure by reason of conduct that would otherwise violate the common law right against malicious prosecution may pursue a Fourth Amendment claim for malicious prosecution. *See Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).

---

[37] Doc. #1 (complaint).

[38] Because Christiane Almeida has not moved for summary judgment and because it is not clear that the same reasons that warrant granting the motion for summary judgment of Detective Berrios would apply to the claims against her, this ruling is without prejudice to Almeida's claims against Christiane Almeida.

[39] Unless otherwise indicated and for ease of readability, this ruling omits internal quotation marks, alterations, citations, and footnotes in text that is quoted from court decisions.

6

Under Connecticut law, the elements of a malicious prosecution claim are that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Spak*, 857 F.3d at 461 n.1 (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210–11 (2010)).

The existence of probable cause is a complete defense to any malicious prosecution claim. *See Frost*, 980 F.3d at 242; *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019). The Supreme Court has explained that "[p]robable cause exists where the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant [an officer] of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949).

More recently, the Supreme Court has made clear that the probable cause standard is not a "high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Ibid.* Thus, "[p]robable cause does not demand that an officer's good-faith belief that a person has committed a crime be correct or more likely true than false." *Mara*, 921 F.3d at 69.

Moreover, if an officer is subject to a lawsuit for money damages on grounds that she has violated a suspect's rights under the Fourth Amendment, then the officer may assert a defense of qualified immunity. Qualified immunity shields government officials from claims for money damages unless a plaintiff shows the officer has violated clearly established law such that any objectively reasonable officer would have understood that her conduct amounted to a violation of the suspect's constitutional rights. *See Frost*, 980 F.3d at 243 n.8; *Mara*, 921 F.3d at 68–69.

An officer is entitled to qualified immunity if she had at least *arguable* probable cause to have initiated a prosecution. *See Stansbury v. Wertman*, 721 F.3d 84, 89 & n.3 (2d Cir. 2013). Arguable probable cause exists if either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).

In addition, for cases where a law enforcement officer has previously satisfied a judge or magistrate that there is probable cause to justify an arrest, this creates no less than a presumption that it was objectively reasonable for the officer to believe that there was probable cause. *See Mara*, 921 F.3d at 73. As the Second Circuit has explained, "[e]ven where a supporting affidavit is found to be deficient in stating probable cause, the fact that a neutral magistrate issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, so as to merit qualified immunity." *Ibid.* To overcome this presumption, "a plaintiff must show (1) that supporting warrant affidavits on their face, fail to demonstrate probable cause; or (2) that defendants misled a judicial officer into finding probable cause by knowingly or recklessly including material misstatements in, or omitting material information from, the warrant affidavits." *Ibid.*

In light of this legal framework, it is readily apparent that Detective Berrios had probable cause to seek the arrest and prosecution of Almeida for the sexual abuse of his daughter. It was objectively reasonable for Detective Berrios to credit the daughter's claims of abuse over the contrary claims of Almeida, especially in light of the additional evidence of Almeida's deception on the polygraph examination. When the police are confronted with conflicting witness accounts about what has happened, courts do not second-guess a police officer's decision to credit one witness's account over another unless there are facts to show that no objectively reasonable

officer could have resolved the conflicting accounts as the police officer did. As the Second Circuit has explained, "[p]robable cause does not necessarily disappear simply because an innocent explanation may be consistent with facts that an officer views as suspicious," for officers are "not required to accept [any particular witness's] account on faith" but are "entitled to weigh [the witness's] explanation … against the facts on the other side of the ledger." *Figueroa*, 825 F.3d at 102; *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (same; notwithstanding plaintiff's claim of innocence, police had probable cause to arrest plaintiff for assault based on the contrary statements of two witnesses). Moreover, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ibid*.

Indeed, the complaint here does not allege that the facts as recited in the affidavit are not true or not enough by themselves to establish probable cause (much less arguable probable cause for purposes of qualified immunity). Instead, the complaint alleges that Detective Berrios omitted various facts from the affidavit that undermined probable cause. But these claims about omissions are not persuasive.

For example, Almeida claims that Detective Berrios omitted that he and the daughter's mother were "embroiled in a highly contentious divorce and custody/visitation dispute."[40] In fact, however, the affidavit describes Almeida's claim that the daughter "was coached by her mother because they are in divorce and custody process."[41]

Almeida also claims that Detective Berrios omitted from the arrest warrant affidavit the fact that "on two separate occasions, after full investigation of the case, she and her superior

---

[40] Doc. #1 at 3 (¶ 14).

[41] Doc. #44 at 3 (¶ 6).

officers had determined that there was no basis for arresting the plaintiff on any of those charges."[42] But even if Detective Berrios and her superior officers thought at some earlier time that they did not have probable cause to seek Almeida's arrest, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Therefore, the relevant inquiry is not whether Detective Berrios or her superiors subjectively believed there was probable cause but rather whether an objectively reasonable law enforcement officer (or reviewing judge) could have concluded on the basis of the facts recited by Detective Berrios in the arrest warrant affidavit that there was probable cause to arrest Almeida. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003).[43] Accordingly, even if Detective Berrios and her superiors had once believed that probable cause was lacking, the fact that Detective Berrios did not describe her own subjective beliefs about the existence of probable cause does not mean that the arrest warrant affidavit was misleading.

Almeida next argues that Detective Berrios sought a warrant "only because she had been ordered to do so by a superior officer" and that "the superior officer had ordered her to do so only because of pressure from the divorce attorney" for the daughter's mother.[44] But there are no admissible facts to show that Detective Berrios or her superiors acted for such allegedly improper reasons. Almeida relies only on his own conclusory interrogatory response and without

---

[42] Doc. #1 at 3 (¶ 14).

[43] *See also Barrera v. City of Mount Pleasant*, 12 F.4th 617, 624 (6th Cir. 2021) (rejecting argument that an arrest was invalid because "the officers allegedly did not subjectively believe they had probable cause when they took him to jail for fingerprinting"); *Johnson v. McCarver*, 942 F.3d 405, 410 (8th Cir. 2019) (rejecting argument that "the fact that the officers allowed a substantial length of time to pass before arresting Johnson casts doubt on the officers' claim that they had probable cause to arrest him," because "[t]hat analysis appears to confuse the subjective beliefs of the officers with the objective requirements of the Fourth Amendment," and noting that "[w]hether the officers subjectively thought there was probable cause to arrest … is irrelevant").

[44] Doc. #1 at 3 (¶ 14).

reference to any admissible, non-hearsay evidence to establish what motivated Detective Berrios or her superiors to seek an arrest warrant at the time that they did.[45] Regardless, "it is well settled that an officer's subjective motivation for an arrest is irrelevant to the probable cause determination." *Warr v. Liberatore*, 853 F. App'x 694, 697 (2d Cir. 2021).

Almeida further argues in his summary judgment papers that Detective Berrios omitted "exculpatory information" within the notes of the KidSafe monitoring representative to the effect that the daughter's behavior was "inconsistent" with abuse.[46] But the complaint fails to allege this. It is too late now for Almeida to change his theory of attack on the adequacy of the arrest warrant affidavit.

In any event, the arrest warrant affidavit expressly references the KidSafe notes in a manner that is favorable to Almeida, describing how the notes portray that "father and daughter's communications, affections, conduct, and activities were appropriate."[47] Accordingly, Almeida has failed to show any material omission from the arrest warrant affidavit with respect to the KidSafe notes.

Almeida also argues that the arrest warrant affidavit failed to disclose the results of a psychosocial examination from April 2016 that determined that Almeida was truthfully denying his daughter's allegations.[48] Again, however, the complaint makes no mention of this alleged

---

[45] Doc. #41-1 at 5 (¶ 1); Doc. #41-2 at 3 (¶ 16) (interrogatory response); *see also Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (rule against hearsay applies at summary judgment).

[46] Doc. #41 at 5; Doc. #41-4 (KidSafe notes).

[47] Doc. #44 at 4 (¶ 9). Almeida additionally claims that the KidSafe notes say that "the mother had been coaching the child to call her father a 'monster.'" Doc. #41 at 5. In fact, however, the KidSafe notes describe an occasion when the daughter told Almeida that her mother had said that he was a "monster." Doc. #41-4 at 5-6. The notes do not say that the mother *coached* her daughter to call her father a monster.

[48] Doc. #41 at 4-5; Doc. #41-1 at 5 (¶¶ 2-3); Doc. #41-3 (report). The report states that the examination was initiated by means of a self-referral by Almeida. *Id.* at 14. It does not reflect any communication between the examiner and Detective Berrios.

11

omission. Nor does the summary judgment record substantiate Almeida's claim that this examination was known to Detective Berrios.

In short, I will grant the motion of Detective Berrios for summary judgment. The facts set forth in the arrest warrant affidavit establish probable cause to arrest Almeida, and Almeida has not shown a genuine fact issue to suggest that the affidavit omitted any material facts that would have vitiated the existence of probable cause. Because probable cause is an absolute defense to a malicious prosecution action and because even arguable probable cause warrants a grant of qualified immunity, summary judgment must be granted to Detective Berrios.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motion of defendant Ivette Berrios for summary judgment. This case shall proceed solely as to Almeida's claims against co-defendant Christiane Almeida.

It is so ordered.

Dated at New Haven this 8th day of March 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge